THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
DONALD L. DEEMS, Defendant-Appellee.

Third District  No. 77-520

Opinion filed July 19, 1979.—Rehearing denied August 20, 1979.

STOUDER, J., dissenting.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

On August 30, 1977, the defendant Donald L. Deems was indicted by the Peoria County grand jury for the offense of theft of a Ford automobile having a value in excess of $150 which offense is alleged to have occurred on August 17, 1977. The defendant was arraigned on September 1, 1977, and the trial set for November 7, 1977.

The offense charged was a violation of section 16—1(d)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(d)(1)), which provides that a person is guilty of theft if he:

"(d) Obtains control over stolen property knowing the property to have been stolen by another or under such circumstances as would reasonably induce him to believe that the property was stolen, and

(1) Intends to deprive the owner permanently of the use or benefit of the property * * *."

On the day set for trial, November 7, 1977, before Judge Iben, the State moved to dismiss the indictment with leave to reinstate, contending

that subsequent investigations revealed that the facts would not support a conviction under section 16—1(d)(1). The court denied the motion to dismiss and stated the motion should have been made prior to the day set for trial. The State then requested a continuance which motion was also denied. The State advised the court that the correct charge of theft should have been brought under section 16—1(a) and that the State intended to correct the error by rewording and reindicting the defendant under the proper charge within a few days. The State explained the difficulty in this manner. The original charge was receiving stolen property under section 16—1(d)(1), and the new charge would be under section 16—1(a), exerting or obtaining unauthorized control over property of another. We believe it important to note that in the first indictment the owner of the stolen property was listed as American National Bank of Nashville while in the second indictment the property was owned by American National Bank and Trust Company of Chattanooga, Tennessee. Proceeding on the first indictment would have produced a fatal variance in proof of ownership as well as other facts contained in the charge.

The following exchange then took place:

"People: Well your Honor, this indictment is defective.

Court: Well, don't worry if the indictment is defective.

Defense: Defense would answer that we are ready for trial * * * and would the court deny the People's Motion and call this matter for trial forthwith."

The court persisted in its refusal to allow the State to dismiss or to permit a continuance and called the case for trial on the basis that the "defendant has a right to go to trial and a right to be found not guilty."

The defendant was sworn as a witness after the State informed the court that the People were unready to proceed to trial and could not present any witnesses. Without hearing any evidence the court said, "Very well. The court will find the defendant not guilty." Judge Iben then dismissed the indictment and apparently indicated that it was a judgment of acquittal.

A new indictment charging the defendant with the offense of theft under section 16—1(a) was issued by the Peoria County grand jury the next day, November 8, 1977. On November 10, 1977, Judge Iben recused himself, and the cause was assigned to Judge Stone for arraignment on that date.

After acknowledging receipt of the new indictment, the defendant moved for dismissal of the new charge on the ground that the proceeding before Judge Iben on November 7, 1977, was a trial and thus that double jeopardy would attach. The court then dismissed the indictment of November 8, 1977, on the grounds of double jeopardy.

The State seeks to appeal from the denial of its motion to dismiss the

first indictment, the denial of a continuance, the acquittal, and finally the dismissal of the second indictment on the grounds of double jeopardy. Defendant has filed a motion to dismiss the State's appeal which this court ordered to be taken with the case.

Several issues are presented by this appeal. While the determinative issue is whether the ruling of the trial court was in fact an acquittal, we first must resolve the threshold issue of whether the court properly refused to grant the State's motion to dismiss the original indictment. The only reason given for refusing the State's motion was that it should have been filed earlier and hence was untimely.

■■ We are troubled by the court's ruling because there were no findings of prejudice and there remained over 30 days before the 120-day rule would expire. (See *People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244.) According to the record, the State's Attorney informed defense counsel of his intent to seek dismissal of the first indictment during the morning of November 7, 1977, but the motion was not brought to the judge's attention until the case was called for trial and therefore was labeled untimely. Under these circumstances, and particularly when construing the authority to dismiss indictments which usually rests in the prosecuting attorney alone, the trial judge should have allowed the State's motion to dismiss, and it was an abuse of discretion for the court not to have done so.

> "The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated." *United States v. Cowan* (5th Cir. 1975), 524 F.2d 504, 513, *cert. denied sub nom. Woodruff v. United States* (1976), 425 U.S. 971, 48 L. Ed. 2d 795, 96 S. Ct. 2168.

This court's decision in *People v. Thomas* (1975), 24 Ill. App. 3d 907, 322 N.E.2d 97, is cited by defendant. In *Thomas* both the State and the defendant requested a continuance and both motions were denied. The trial court, after calling a jury, dismissed the case "for want of prosecution" after the State refused to proceed with the *voir dire*. This court concluded that the trial court had no right to dismiss for want of prosecution, but made a statement on which the defendant relies: "Where the motion for a continuance has been properly denied the case should be called for trial, and if no evidence or insufficient evidence is presented by the People, then a judgment of acquittal may be entered by the Court."

The defendant has failed to recognize that this court's statement in *Thomas* is limited to a "properly" denied continuance. As we stated earlier, the record in the instant case clearly indicates an improper denial of the State's motion to dismiss as well as its motion for a continuance. Since this was the first request for a continuance, and for only several

days, it is evident that such an insignificant delay would not have prejudiced the defendant. We believe that the State's request for dismissal or continuance was a reasonable request which was improperly denied. See the well-reasoned opinion of a similar set of facts in *People v. Dellecarto* (1978), 67 Ill. App. 3d 490, 384 N.E.2d 902. The defendant's reliance on this court's decision in *City of Peoria v. Davis* (1976), 39 Ill. App. 3d 557, 350 N.E.2d 531, is also distinguishable. In *Davis*, the trial court granted the defendant's motion to suppress evidence and then the three defendants were sworn as witnesses. *En Masse*, each defendant stated that he was not guilty, and the trial court entered a judgment of acquittal. On appeal, after noting that the State had not claimed that the appeal was interlocutory from the order suppressing the evidence, we held that the trial court's judgment was an acquittal after a hearing on the merits and therefore not appealable.

In the case *sub judice*, although the defendant was sworn as a witness, no testimony or evidence was received. Consequently, it was impossible for the trial court to make a finding on the merits. The dismissal of the indictment in the case before us came about by the request of the defendant and his demand for an immediate trial on a faulty indictment. The most recent case concerning the validity of a double-jeopardy claim involved *People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527, 387 N.E.2d 325, and Mr. Justice Underwood said:

"Of particular importance in this regard is whether the mistrial may fairly be said to have been attributable to defendant, for where a mistrial is declared upon defendant's motion, a different analysis is applicable. The United States Supreme Court set out the standard in *United States v. Jorn* (1971), 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547, as follows:

'[W]here circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error.' " (400 U.S. 470, 485, 27 L. Ed. 2d 543, 556, 91 S. Ct. 547, 557.)

We believe there can be no doubt that the dismissal entered in the case at bar was the result requested by defendant.

Having concluded that the trial court erred when it refused to grant the State's motion to dismiss, we next must consider whether the subsequent proceeding amounted to a judgment of acquittal. If defendant was in fact acquitted, then prosecution on the second indictment would constitute double jeopardy and we would be compelled to reverse. We note that the trial court examined no evidentiary matters between the parties, no issues of fact or law were determined, and

neither party presented a smidgen of evidence to the court after the prosecution decided not to proceed on a faulty charge.

■■ We believe the controlling decision is that of the United States Supreme Court in *United States v. Scott* (1978), 437 U.S. 82, 57 L. Ed. 2d 65, 98 S. Ct. 2187, which involved a dismissal during trial of two counts of a three-count indictment because of prejudice from preindictment delay. In holding that the Government was not precluded from appealing the order dismissing the first two counts on the asserted ground that an appeal would offend double jeopardy clause, the court said:

> " '[T]he trial judge's characterization of his own action cannot control the classification of the action.' * * * Rather, a defendant is acquitted only when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.' *Martin Linen, supra*, 430 U.S., at 571, 97 S. Ct., at 1355." 437 U.S. 82, 96-97, 57 L. Ed. 2d 65, 77-78, 98 S. Ct. 2187, 2196-97.

■■ "Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier 'having jurisdiction to try the question of the guilt or innocence of the accused.' [Citations.] Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Serfass v. United States* (1975), 420 U.S. 377, 391-92, 43 L. Ed. 2d 265, 276, 95 S. Ct. 1055, 1064.

In *Illinois v. Somerville* (1973), 410 U.S. 458, 35 L. Ed. 2d 425, 93 S. Ct. 1066, where the issues closely resemble the instant case, the defendant was charged with theft in an indictment which failed to allege the defendant's intent to permanently deprive the owner of his property. Following the impaneling and swearing of the jury, but prior to the presentation of any evidence, the State realized that the indictment was fatally defective. The trial court granted the People's motion for a mistrial. The Illinois courts upheld the defendant's conviction based upon a subsequent indictment, despite the defendant's claim that he had been subjected to double jeopardy.

The Supreme Court determined that the defect in the original indictment was jurisdictional and could not be waived by the defendant's failure to object and could be asserted in any post-conviction proceedings or on appeal to overturn the conviction. In affirming the conviction the court then said:

> "If an error would make reversal on appeal a certainty, it would not serve 'the ends of public justice' to require that the Government proceed with its proof when, if it succeeded before the jury, it would automatically be stripped of that success by an appellate court." 410 U.S. 458, 464, 35 L. Ed. 2d 425, 431, 93 S. Ct. 1066, 1070.

■■ Likewise, in the instant case, the problem with the first indictment could not be cured by amendment, and a conviction based upon it would have meant certain reversal on appeal, because the proof could not have conformed to the allegations of the indictment. To order the trial to proceed, as the trial court did, could not possibly serve the "ends of public justice." The only appropriate method of procedure was, as indicated above, dismissal of the indictment.

■■ In the case before us the defendant successfully avoided a trial by persuading the trial court not to allow the People's motion to dismiss a defective indictment, and then insisting that the trial court grant an acquittal on a basis which did not depend on guilt or innocence. He has not been "deprived" of his valued right to go to trial to determine his guilt or innocence; only the public has been deprived of its valued right to "one complete opportunity to convict those who have violated its laws." *Arizona v. Washington* (1978), 434 U.S. 497, 509, 54 L. Ed. 2d 717, 730, 98 S. Ct. 824, 832.

Since the dismissal and apparent acquittal in the instant case was a pretrial matter without any evidence being presented, we believe the following comment in *Scott*, 437 U.S. 82, 100, 57 L. Ed. 2d 65, 80, 98 S. Ct. 2187, 2198, is of particular importance:

"No interest protected by the Double Jeopardy Clause is invaded when the Government is allowed to appeal and seek reversal of such a *midtrial* termination of the proceedings in a manner favorable to the defendant." (Emphasis added.)

Certainly a *pretrial* dismissal should not bar a subsequent prosecution when a midtrial dismissal is not protected under the *Scott* decision.

Defendant's attempt to rely on section 3—4(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 3—4(b)(1)) is without merit. The statute provides:

"(b) A prosecution is barred if the defendant was formerly prosecuted for a different offense, or for the same offense based upon different facts, if such former prosecution:

(1) Resulted in either a conviction or an acquittal, and the subsequent prosecution is for an offense of which the defendant could have been convicted on the former prosecution; or was for an offense with which the defendant should have been charged on the former prosecution, as provided in Section 3—3 of this Code (unless the court ordered a separate trial of such charge); or was for an offense which involves the same conduct, *unless each prosecution requires proof of a fact not required on the other prosecution*, or the offense was not consummated when the former trial began; * * *." (Emphasis added.)

As heretofore noted, the second indictment alleged a different owner of the automobile involved, requiring proof of a fact not required in the first indictment.

■■ In *People v. King* (1974), 21 Ill. App. 3d 256, 314 N.E.2d 694, a quite similar set of facts appear. In that case, after charges against defendant for wilful failure to file income tax returns had been dismissed on grounds that the complaints failed to set forth any relationship of defendant with the employing corporation, the trial judge dismissed a subsequent prosecution of the defendant on the same charges on grounds of double jeopardy. On appeal the reviewing court held that the first dismissal for "technical insufficiency" was not tantamount to an acquittal. The court noted that the Committee Comments to section 3—4(a)(2) of the Criminal Code (Ill. Ann. Stat., ch. 38, par. 3—4(a)(2), Committee Comments, at 215 (Smith-Hurd 1972)) include the following:

> "A dismissal of a case, sometimes called an acquittal not on the merits, based on variance or defective indictment or information * * * is not a bar to a subsequent prosecution."

In 22 C.J.S. *Criminal Law* §246 (1961), it is stated:

> "[T]he general rule is that, in order that jeopardy may attach, there must be a valid indictment * * *. So, where the indictment or information is so defective in form or substance that it will not support a conviction, it cannot form the basis of proceedings which will put accused in jeopardy and bar another prosecution."

Defendant also relies on *Sanabria v. United States* (1978), 437 U.S. 54, 57 L. Ed. 2d 43, 98 S. Ct. 2170, where the court held a defendant once acquitted may not be again subjected to trial without violating the double jeopardy clause. *Sanabria* involved a charge of conducting a gambling business in violation of a Federal statute. At trial there was evidence that the defendants had been engaged in both horse betting and numbers betting. After the defendants had rested, the trial judge granted defendants' motion to exclude all evidence of numbers betting and then entered a judgment of acquittal for a lack of evidence. The Government appealed, and Mr. Justice Marshall held that, while the numbers evidence was erroneously excluded, the judgment of acquittal produced thereby is final and unreviewable.

But the circumstances of that case are obviously a far cry from the present facts, where the State was refused a dismissal before trial while the defendant sought termination of his case on grounds unrelated to guilt or innocence. Again in *Scott* the court distinguished *Sanabria*, saying:

> "This is scarcely a picture of an all-powerful state relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact. It is instead a picture of a defendant who chooses

to avoid conviction and imprisonment, not because of his assertion that the Government has failed to make out a case against him, but because of a legal claim that the Government's case against him must fail even though it might satisfy the trier of fact that he was guilty beyond a reasonable doubt." 437 U.S. 82, 96, 57 L. Ed. 2d 65, 77, 98 S. Ct. 2170, 2196.

Unlike the situation in *Sanabria*, the case before us is not one where a full presentation of evidence was before the court but one where the trial court resolved no factual elements and in fact it heard no testimony. In the absence of a factual determination, the case at bar cannot be governed by the ruling in *Sanabria*.

■■ We conclude, therefore, that the second indictment of defendant did not violate the double jeopardy clause, and should not have been dismissed.

Defendant also claims that this court lacks jurisdiction to consider this appeal because the State is seeking to review a verdict of acquittal in violation of article VI, section 6 of the Illinois Constitution, which provides that "after a trial on the merits in a criminal case, there shall be no appeal from a judgment of acquittal." (Ill. Const. 1970, art. VI, §6.) Since in the instant case, there was no hearing touching upon the merits of defendant's innocence or guilt of the crime charged, that argument is without merit. Consequently, we have determined that the trial court's action was not tantamount to an acquittal for double jeopardy purposes, and we hold that, likewise, for purposes of appeal, there was no acquittal but rather an improper dismissal for failure of the State to present evidence.

The judgment of the Circuit Court of Peoria County is therefore reversed and the cause remanded for proceedings consistent with this opinion.

Reversed and remanded.

BARRY, P. J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I am constrained to disagree with the opinion of my colleagues. Defendant was found not guilty of the initial charge and the judgment of acquittal is not appealable by the State. I would grant the defendant's motion to dismiss the State's appeal.

The majority have failed to address what is the threshold issue of this case, *i.e.*, the extent of the State's right to appeal. Article VI, section 6 of the Illinois Constitution of 1970 provides that "after a trial on the merits in a criminal case, there shall be no appeal from a judgment of acquittal."

At common law the State had no right whatsoever to appeal from adverse rulings by the trial court. (*United States v. Sanges* (1892), 144 U.S. 310, 36 L. Ed. 445, 12 S. Ct. 609.) Hence, any authority which the State may have to appeal from rulings of the trial court must have its genesis in either the constitution, statutes or court rules, and of course, decisions interpreting them. That authority is currently found in Supreme Court Rule 604(a)(1) (Ill. Rev. Stat. 1977, ch. 110A, par. 604(a)(1)).

Rule 604(a)(1) together with its reference to section 114—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—1) provides:

"* * * In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114—1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence."

Section 114—1 sets forth 10 grounds on which a defendant's motion to dismiss may be granted and from which the State may appeal adverse rulings. Neither in form or in substance was there any claim made in the trial court or in this court that section 114—1 is any authority for the appeal in this case. Although the grounds in section 114—1 are those upon which dismissal of charges are ordinarily based, they have been held not to be exclusive. Where the action of the trial court results substantially in the dismissal of the charge, the action of the trial court adverse to the State may be appealed even though the basis for the relief is not specified in section 114—1. (See *People v. Love* (1968), 39 Ill. 2d 436, 235 N.E.2d 819, and *People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244.) However, neither the judgment of acquittal nor the claimed errors in the trial court's rulings either dismissed a charge in whole or part, or have the substantial effect of doing so. In fact the action of the trial court was quite to the contrary.

While the majority summarily concludes "there was no acquittal but rather an improper dismissal for failure of the State to present evidence," it does so without mentioning Rule 604 or the statute. By characterizing the judgment of acquittal as a dismissal for the failure of the State to present evidence, the majority recognizes that the judgment was based on the failure of the State to prove its case. A judgment based on insufficient evidence is akin to a directed verdict of acquittal, which the courts of this State have long held is not appealable by the State. See *People v. Augitto* (1971), 1 Ill. App. 3d 78, 273 N.E.2d 15.

The State has the burden of presenting sufficient evidence to convict the defendant beyond a reasonable doubt and when the State fails to do so, it is the court's duty to enter a judgment of acquittal, as occurred in the

instant case. Once a judgment of acquittal is entered for the failure of the State to prove defendant guilty beyond a reasonable doubt (see *People v. Thomas* (1975), 24 Ill. App. 3d 907, 322 N.E.2d 97), the State is precluded by article VI, section 6 of the 1970 Illinois Constitution and Rule 604 from appealing the trial court's decision. *City of Peoria v. Davis* (1976), 39 Ill. App. 3d 557, 315 N.E.2d 531.

The majority rejects the applicability of the *Davis* case because in that case the defendants were sworn and *en masse* said they were not guilty. I fail to see how this difference in procedure detracts from the rule in *Davis*, and the majority by such reliance fails to recognize what I consider to be the essence both of the *Davis* case and this case. When a case is called for hearing and the State declines to present evidence, or as in the instant case states for the record it can not prove the charge, a judgment of acquittal is the appropriate action on the merits of the controversy. The State has the affirmative obligation to prove the guilt of the defendant and its failure to do so customarily results in a judgment of acquittal.

To the extent that there is any applicability of the mistrial cases or their reasoning (*United States v. Jorn* (1971), 400 U.S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547; *People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527, 387 N.E.2d 325), I believe they support and are consistent with the view I have taken. Where a defendant seeks a mistrial, he is affirmatively requesting that the trial of the case cease and that it recommence anew on account of trial error. The defendant himself seeks to prevent a final determination. In the instant case or in those cases where the State has failed to prove its case by sufficient evidence, the defendant in moving for judgment in his favor is requesting the proceeding continue in due course to final decision. Since the action of the defendant and the court here does not represent any cessation or interruption of the proceeding at the request of the defendant, there is of course no basis for a mistrial and no reason for assessing any unfavorable consequences against the defendant on account of his conduct.

The principal case cited by the majority to support the appealability of the judgment of acquittal is *People v. Dellecarto* (1978), 67 Ill. App. 3d 490, 384 N.E.2d 902. While *Dellecarto* has significant weaknesses in that the trial court was confused about the disposition it intended and the court on appeal ignored that the insufficiency of the evidence was the basis for the judgment of acquittal, I believe the opinion departs from the established concepts regarding judgments of acquittal and jeopardizes the constitutional protections afforded the defendant. I find such paucity of case precedent and statutory authority supporting the majority particularly disturbing since judgments of acquittal have traditionally not been appealable by the State.

The majority has inferred that the limitation of the State's right to appeal under 604(a)(1) is co-extensive with the limitations imposed by the double jeopardy clause. While I disagree with the majority's analysis that defendant will not be placed twice in jeopardy, I also believe, apart from such an issue, that Rule 604(a)(1) does not authorize appeals by the State to the same extent as with the double jeopardy clause.

The present situation is comparable to one previously existing in the Federal court. Prior to 1971, 18 U.S.C. §3731 governed appeals and issues relating to the government's right of appeal revolved around statutory construction more than the constitutional concepts of double jeopardy. When section 3731 was amended to provide appeals to the full extent allowed by the double jeopardy clause, the court found that previous decisions construing the statute proved to be of little assistance in determining when the double jeopardy clause of the fifth amendment would prohibit further prosecution. *United States v. Scott* (1978), 437 U.S. 82, 57 L. Ed. 2d 65, 98 S. Ct. 2187.

Similarly, our Supreme Court Rule 604(a)(1) provides specified grounds which enable the State to prosecute an appeal. Unless the rule allowing State appeals exceeds the limits of the double jeopardy clause, it is the rule and not the double jeopardy clause which determines the State's right to appeal. It is the rule which authorizes State appeals and not the doctrine of double jeopardy.

In its notice of appeal, the State attempts to appeal from four distinct rulings. With respect to the first indictment, the State appeals from the order denying the State's motion to dismiss, the order denying the State's motion for a continuance and the judgment of acquittal. With respect to the second indictment the State appeals from the order dismissing the second indictment based upon defendant's claim of double jeopardy.

It is important to recognize that two judgments are involved and that on this appeal we are primarily concerned with the judgment of acquittal on the first indictment. Both parties agree that the propriety of the judgment dismissing the second indictment stands or falls dependent on the decision on the earlier judgment. The conceded appealability of the second judgment pursuant to Rule 604 has no effect on the appealability of the first judgment.

Not only does the majority ignore the fact the judgment was one of acquittal for insufficient evidence, it insists the denial of the State's motions for dismissal and continuance was erroneous and then claims such error makes the judgment reviewable. The majority concludes that the prosecutor has sole authority to decide when charges should be dismissed and thereby infers that the judge is acting in a purely ministerial capacity when deciding a State's motion to dismiss. While I do not believe

we have the authority to consider such an issue, since I also believe the majority is in error, I will respond to their opinion.

First, the majority's position ignores the trial judge's responsibility under *Illinois v. Sommerville* (1973), 410 U.S. 458, 35 L. Ed. 2d 425, 93 S. Ct. 1066, and its progeny, to determine that "manifest necessity" or the "ends of public justice" require a dismissal of the prosecution upon a motion of the State. If the trial judge has such a responsibility, he is certainly more than a rubber stamp. Second, and equally as important, Illinois does not grant the prosecution such authority, but confers the trial judge with discretion in deciding both prosecution motions for dismissal and continuance. Even the Federal decision relied upon by the majority, *United States v. Cowan* (5th Cir. 1975), 524 F.2d 504, indicates that Illinois by judicial decision has given the courts a responsible role in dismissal of pending criminal proceedings, citing *People ex rel. Hoyne v. Newcomer* (1918), 284 Ill. 315, 120 N.E. 244, and *People ex rel. Kunstmen v. Nagano* (1945), 389 Ill. 231, 59 N.E.2d 96.

*Hoyne* rejected the English rule that a prosecutor has absolute discretion to dismiss and held that "consent and approval of the court should be required." While it appears that the Attorney General for the State of Illinois may have such absolute power, it is clear the state's attorney does not. (See *People v. Daniels* (1956), 8 Ill. 2d 43, 132 N.E.2d 507.) Hence, the trial court was within its authority to consider the propriety of the State's motion to dismiss.

The majority also suggests that perhaps the action of the trial court was a dismissal of the charge for want of prosecution, which action was unauthorized under such cases as *People v. Thomas* (1975), 24 Ill. App. 3d 907, 322 N.E.2d 97. While the present record itself reveals the charge against this defendant was not dismissed for want of prosecution, the reason given by the *Thomas* court for its result is no longer viable. In *Thomas* the court said a dismissal for want of prosecution was not specified in section 114—1 and consequently, the charge could not be dismissed for other reasons. In the recent case of *People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244, the rule regarding the exclusiveness of the grounds enumerated in section 114—1 was rejected, and to that extent, *Lawson* reversed the reasoning of *People v. Shick* (1968), 101 Ill. App. 2d 377, 243 N.E.2d 285, and *People v. Abel* (1974), 21 Ill. App. 3d 314, 315 N.E.2d 136, and its progeny, which includes *Thomas*.

The State's efforts at transforming a judgment of acquittal into a dismissal for want of prosecution fail to observe the critical importance of the trial court's pronouncement of its judgment of acquittal. Whenever judgment of acquittal is entered, certain legal consequences follow the mere pronouncement of the judgment of acquittal, not the least of which

is the notion that the trial court believes there was insufficient evidence to find the defendant guilty. The constitution of our State (Ill. Const. 1970, art. VI, §6) and the Criminal Code (Ill. Rev. Stat. 1977, ch. 38, par. 3—4) prohibit appeals from judgments of acquittal. I believe that these constitutional and statutory provisions mean just what they say. To so lightly cast aside these prohibitions poses grave threats to the integrity of judgments of acquittal and allows judicial inquiry into areas not heretofore allowed. I believe the trial court's pronouncement on November 7, 1977, was nothing more nor less than a judgment of acquittal and precludes our inquiry into matters relating to that judgment.

Even though, as I have indicated, I believe the judgment of acquittal is not reviewable by this court, as I have also indicated, the trial court has the authority to review the State's motion to dismiss its own charge. I believe the court acted properly in the exercise of that authority. The facts are not particularly in dispute. The State was aware of the problems with the indictment at least 1½ weeks prior to the date scheduled for trial, and the State was informed at that time the defendant wished to proceed to trial before a jury on the date then scheduled. Neither formally nor informally did the State notify opposing counsel or the trial court in advance of the trial of its intention not to try the case because the State wanted to dismiss the charges and secure a new indictment. The case had been set for trial quite some time in advance, and the State was well aware of the trial date.

On the date of trial, the defendant, his counsel, and his witnesses appeared in court ready for trial and it was only at this juncture that the State moved to dismiss the indictment and delay the trial until a new indictment could be secured. It appears the State was aware of its intention to dismiss the indictment well in advance of the trial date. The prosecution offered no reason or excuses why it had not taken the action earlier. Nor did it notify defense counsel of its intention to do so in order to avoid the vexation, inconvenience to the court and the defendant and of course, the unnecessary and unjustified delay of defendant's right to trial. The state conceded at the time of its motion that the indictment did state an offense and was not defective in any regard. Its only reason for seeking the dismissal and a new indictment was that it could not prove the charge alleged in the indictment. The indictment had been pending for five weeks at this time. It appears the defendant was arrested sometime prior to indictment. The exercise of the trial court's discretion in declining the motions is amply supported by the facts before it.

In the recent case of *People v. Hills* (1979), 71 Ill. App. 3d 461, 389 N.E.2d 873, defense counsel sought a continuance on the day of trial because he had not interviewed his client or conducted any pretrial

discovery, but the trial court rejected defendant's motion when it appeared the State was ready for trial and the reasons for the continuance motion were known to defense counsel well in advance of the trial date. On appeal, the appellate court affirmed the trial court's actions. Where, as in the instant case, the defendant was present with his witnesses for trial, delay at the request of the State is only justifiable for good cause shown and I agree with the trial court that good cause was not shown. Hence, I believe there was no error committed by the trial court in denying both the State's motion for a dismissal and continuance.

Related to statutory and constitutional prohibitions against appeals from judgments of acquittal, is the scope of the double jeopardy clause of our Federal and State constitutions. While much of what has been stated heretofore has been concerned primarily with the statutory prohibitions against appeals, it is also applicable to questions of double jeopardy. Relying on *United States v. Scott* (1978), 437 U.S. 82, 57 L. Ed. 2d 65, 98 S. Ct. 2187, the majority holds that the double jeopardy clause will not be offended by the trial of defendant on a second indictment. While I have previously expressed the belief that the focus of our inquiry should not be on the double jeopardy clause, but rather on Rule 604(a)(1), I also believe the majority's position on the issue of double jeopardy is incorrect. The order of November 7, 1977, was a factual resolution of the charge and trying defendant on the second indictment would place him twice in jeopardy. I do not believe the decision in *Scott* requires otherwise.

While *Scott* is a relevant exposition of the principles underlying the double jeopardy clause, the majority's reliance on its holding to support their result is misplaced. *Scott* held that where a defendant seeks to have the trial terminated without any submission to either judge or jury as to his guilt or innocence, an appeal by the government from his successful effort to do so is not barred by the principles of double jeopardy. Hence, reliance on *Scott* as controlling is improper where, as here, the defendant did not seek a dismissal, but urged the case to trial.

In *Scott*, in ordering a dismissal for preindictment delay, the district court clearly contemplated an order premised on grounds distinct from factual questions of guilt or innocence. Contrawise, in the present case, the trial court entered a judgment of acquittal based upon the lack of evidence to convict the defendant. Whether or not any aspect of the trial court's actions was proper or erroneous, and I believe they were proper, the fact remains the proceedings were terminated favorably to the defendant on a basis related to guilt or innocence as established by the State's case.

In discussing the significance of the entry of a judgment of acquittal, the United States Supreme Court in *Scott* stated:

"A judgment of acquittal, whether based on a jury verdict of not guilty or a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution when a second trial would be necessitated by a reversal. What may seem superficially to be a disparity in the rules governing a defendant's liability to be tried again is explainable by reference to the underlying purposes of the Double Jeopardy Clause. As *Kepner* and *Fong Foo* illustrate, the law attaches particular significance to an acquittal. To permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that 'even though innocent he may be found guilty'. [Citation.]" 437 U.S. 82, 91, 57 L. Ed. 2d 65, 74, 98 S. Ct. 2187, 2193-94.

Attempts by the majority to characterize the trial court's decision as a "pretrial dismissal" fails to recognize that the indictment of November 7 was called to trial by the judge, as he had the authority to do, and an order was entered finally disposing of the case based upon the merits of the State's case. Based upon the proceedings at trial, the trial court felt compelled to enter a judgment of acquittal.

"[T]he fact that 'the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles,' * * * affects the accuracy of that determination, but it does not alter its essential character. By contrast, the dismissal of an indictment for preindictment delay represents the legal judgment that a defendant, although criminally culpable, may not be punished because of the supposed constitutional violation." 437 U.S. 82, 98, 57 L. Ed. 2d 65, 79, 98 S. Ct. 2187, 2197.

Hence, errors preceding the judgment of acquittal may affect the accuracy of the judgment but such errors can not and do not alter its essential character. While what constitutes an "acquittal" for purposes of double jeopardy is not controlled by the form of the judge's action (*United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 51 L. Ed. 2d 642, 97 S. Ct. 1349), such orders, if representing a determination that the State had not proved facts constituting the offense, whether correct or not, do bar subsequent prosecution. As was stated in *Sanabria v. United States* (1978), 437 U.S. 54, 64, 57 L. Ed. 2d 43, 53, 98 S. Ct. 2170, 2178:

"In deciding whether a second trial is permissible here, we must immediately confront the fact that petitioner was acquitted on the indictment. That '[a] verdict of acquittal * * * [may] not be reviewed * * * without putting [the defendant] twice in jeopardy, and thereby violating the Constitution,' has recently been

described as 'the most fundamental rule in the history of double jeopardy jurisprudence.' *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977), quoting *United States v. Ball*, 163 U.S. 662, 671 (1896). The fundamental nature of this rule is manifested by its explicit extension to situations where an acquittal is 'based upon an egregiously erroneous foundation.' *Fong Foo v. United States*, 369 U.S. 141, 143 (1962); [citations]."

Hence, there can be no review of a judgment of acquittal entered under Rule 29(g) of the Federal Rules of Civil Procedure (*United States v. Martin Linen Supply Co.*), no second trial after reversal on appeal for insufficient evidence (*Burkes v. United States* (1978), 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141), and no appeal from a midtrial exclusionary ruling and a subsequent acquittal (*Sanabria v. United States*, 437 U.S. 54, 57 L. Ed. 2d 43, 98 S. Ct. 2170). I believe that the defendant was tried and acquitted of the charges contained in the first indictment and subsequent retrial is barred by double jeopardy.

Finally, the majority suggests the earlier judgment was not a bar to the second prosecution because the owner appears to have been described differently in the second indictment. I think it is sufficient to say this argument was not advanced in the trial court because the State in prosecuting the second indictment claimed the stay of acquittal was invalid or a nullity. No argument was made by the State that if the original judgment was valid, it nevertheless could prosecute on the second indictment.

For the foregoing reasons, I believe the State's attempted appeal from the trial court's denial of the State's motion to dismiss the first indictment, the trial court's denial of the State's motion for a continuance, and the judgment of acquittal on the first indictment should all be dismissed. The decision of the trial court to dismiss the second indictment should be affirmed.